UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA BRACA and JOHN A. BRACA, JR.,<br>*Plaintiffs*,<br><br>v.<br><br>EMC MORTGAGE CORP., et al.,<br>*Defendants*. | Civil No. 3:13-cv-1036 (JBA)<br><br>August 20, 2013 |

**RULING ON PLAINTIFFS' OBJECTIONS TO RECOMMENDED RULING AND EMERGENCY MOTION FOR STAY AND ORDER OF DISMISSAL**

On July 23, 2013, Magistrate Judge Margolis issued a Recommended Ruling [Doc. # 10] ("Rec. Ruling") on John Braca's Motion [Doc. # 2] for Leave to Proceed In Forma Pauperis, Plaintiffs' Motion [Doc. # 3] to Seek Stay(s) of state court judgments, and Plaintiffs' Motion [Doc. # 4] to Open Judgment of the state court. Judge Margolis granted in forma pauperis status, but recommended the dismissal of the pro se Plaintiffs' case in its entirety for failure to state claims for relief and on jurisdictional grounds and denied the motion to stay and motion to open judgment without prejudice to renewal. Plaintiffs filed a timely objection [Doc. # 11], arguing that Magistrate Judge Margolis erred in concluding that their claims for injuries resulting from state court judgments were precluded by the *Rooker-Feldman* doctrine and in recommending the dismissal of their other claims. On August 12, 2013, Plaintiffs filed an emergency motion [Doc. # 12]

to stay the foreclosure of two of their properties, for which law days have now been set by the Superior Court.[1]

I. **Factual and Procedural Background**

The factual background preceding this lawsuit is detailed in the Court's recent order dismissing a separate but related suit by Plaintiffs and is incorporated by reference here. *See Braca v. Leventhal*, 3:13-CV-874 (JBA) (Aug. 19, 2013) ("*Braca I*"). Both *Braca I* and this action ("*Braca II*") have their origins in the fallout from a real estate investment made by Robert Utzler with John Braca, and ensuing judgments entered against Plaintiffs in the Superior Court of Connecticut. In *Braca I*, Plaintiffs alleged that Defendants Utzler and Michael Leventhal fraudulently obtained "unlawful judgment and liens" against them in the Superior Court ("the Utzler Superior Court litigation"). *Id.* at 2. In the Utzler Superior Court litigation, Utzler prevailed on claims against John Braca for fraud, intentional misrepresentation, violation of the Connecticut Unfair Trade Practices Act, breach of fiduciary duty, and breach of contract. *See Utzler v. Braca,* No. FBTCV065003257S, 2008 WL 2068200, at *31 (Conn. Super. Ct. Apr. 25, 2008), *aff'd* 115 Conn. App. 261 (2009). The Superior Court found that John Braca "made a knowingly false representation" to Utzler regarding his success in a real estate development project to induce Utzler to invest a large sum of money with him and then used Utzler's investment for personal expenses and to pay debt from the project that Braca used to induce Utzler's investment and which had actually been a failure. *Id.* at *8, *29.

---

[1] Plaintiffs have not served Defendants with a summons and complaint in this action as required by Fed. R. Civ. P. 4.

2

In *Braca I*, Plaintiffs sought damages from Utzler and his attorney, Leventhal, an order vacating the judgments and liens resulting from the Utzler Superior Court litigation, and a stay of the foreclosure of the same two properties that are also at issue here in *Braca II*. On August 19, 2013, this Court dismissed Plaintiffs' complaint in *Braca I* in its entirety, ruling that (1) claims seeking review of the judgments from the Utzler Superior Court litigation were barred by the *Rooker-Feldman* doctrine, (2) Plaintiffs failed to state a plausible RICO claim, and (3) the Court lacked diversity jurisdiction over Plaintiffs' other claims.

Plaintiffs now seek relief from two foreclosure actions their lenders brought against them in Superior Court ("the Superior Court Foreclosure Actions") to satisfy the judgments resulting from the Utlzer Superior Court litigation.[2] The Recommended Ruling in *Braca II* concluded that: (1) As in *Braca I*, this Court lacks jurisdiction over Plaintiffs' claim for relief from the Superior Court Foreclosure Actions; (2) Plaintiffs failed to state a claim under the Fair Housing Act (FHA), because they did not allege discrimination on the basis of membership in a protected group; and (3) this Court "lacks jurisdiction" over Plaintiffs' claims of "banking fraud" under the criminal code.[3] (*Braca II* Rec. Ruling at 3.)

---

[2] Plaintiffs were represented by counsel in the Utzler Superior Court litigation, *see Utzler* 2008 WL 2068200, at *1, and a breach of contract action that Plaintiffs filed against Countrywide in state court making many of the same claims alleged here, *see Braca v. Countrywide Home Loans, Inc.*, CV054013527S, 2008 WL 2930297, at *1 (Conn. Super. Ct. July 8, 2008). They have proceeded pro se in *Braca I*, here, and in the Superior Court Foreclosure Actions. (S*ee Braca II* Rec. Ruling at 3 n.2..

[3] The Recommended Ruling also noted that aside from *Braca I*, Plaintiffs have attempted to remove three separate state cases filed by Defendants named in this case to federal court and in each case motions to remand were granted and Plaintiffs filed

3

The Complaint in this action sets forth five separate counts:

Count One: "Banking Fraud and Lender Liability," alleging that ECF's predecessor Countrywide Homeloans ("Countrywide") committed criminal violations of 18 U.S.C. § 1344 (Bank Fraud) and 18 U.S.C. § 1014 (false statement on a loan application) by falsely promising to Plaintiffs that it would provide $1,670,000 in construction financing for Plaintiffs' property at 3 Grays Farm Road in Westport, Connecticut. (Compl. ¶¶ 2–5, 13–22.) Plaintiffs allege that relying upon this promise, they accepted a $930,000 loan from Countrywide to purchase the property, but were unable to develop the property as they planned after Countrywide failed to provide additional financing. (*Id.* ¶13.) Plaintiffs further allege that Countrywide was aware that Plaintiffs had purchased this property solely in order to develop it and were dependent upon Countrywide providing additional financing. (*Id.*) Plaintiffs also allege that an employee of Countrywide made false statements in the mortgage application regarding John Braca's income and the value of the property. (*Id.* ¶¶ 3, 6.) On October 17, 2006, EMC commenced the first of the two Superior Court Foreclosure Actions against Plaintiffs in Bridgeport. (*Id.* ¶ 12.) The court "would not allow EMC to proceed to a judgment and a foreclosure without having a full trial as to the fraud" also alleged here, but the case has "remained dormant for 7 years." (*Id.*) Nevertheless, EMC "is attempting and has allowed" another bank, First Connecticut Capital (FCC), that also has a mortgage on the property, to foreclose on its mortgage in Superior Court in Stamford. (*Id.* ¶¶ 27, 29.) Plaintiffs allege that EMC "entrap[ped] the Plaintiffs into debt with a property they could do nothing with" and "is attempting to avoid numerous counts of Banking Fraud" by receiving proceeds from FCC's foreclosure of the property. (*Id.* ¶¶ 26–27.)

Count Two: "Fraud to Induce Banking Fraud," "Unlawful Judgments Obtained Through Fraud," and "a Conflict of Interests," asserting several allegations against FCC. First, a FCC employee falsely stated that FCC did not make loans to individuals, and as result, Patricia Braca transferred her property to a limited liability company to obtain a loan. (*Id.* ¶ 30–33.) In fact, FCC did make loans to individuals and, thereby, created "fraudulent lending requirements to discriminate against Patricia Braca by refusing to lend to

---

"frivolous" motions for leave to appeal in forma pauperis. Judge Shea warned Plaintiffs that they could be subject to sanctions for filing further notices of removal. (*See id.* at 3 n.3.)

4

her individually" in violation of the FHA. (*Id.* ¶ 44.) Second, Plaintiffs claim that FCC's false statement caused Patricia Braca to transfer the property to a limited liability company, which she wouldn't have done otherwise, and as a result, the property became vulnerable to the judgment lien that resulted from the Utlzer Superior Court litigation. (¶ 58.) Third, FCC sold off portions of Plaintiffs' mortgage to third-party investors through loan serving agreements without Plaintiffs' knowledge, and in doing so made "an outright fraudulent representation of every written fact" regarding the mortgage in order to entice investors in violation of 18 U.S.C. §§ 1344 and 1014. (*Id.* ¶¶ 45, 50.) Plaintiffs claim that as a result, Defendants' judgments in the Superior Court Foreclosure Actions were "obtained by fraud" and "must be vacated." (*Id.* ¶ 57.)

Count Three: "Lender Liability" against FCC, repeating many of the same factual allegations that are described in Count Two and stating that the "defendants have deliberately and maliciously tied the Plaintiffs up since 2006 through their manipulated fraud." (¶ 75.)

Count Four: "Civil Conspiracy and Abuse of Process," alleging that FCC and their attorneys sold mortgages "to investors based upon a Fraudulent Loan Application" and committed fraud against borrowers and investors "to create income and entrapped the Plaintiffs while Attorney Goldman through his law firm Abused the Legal Process for Goldman's own personal gains to eventually get the Plaintiffs to build a $4,300,000 home for them to attempt to capitalize from." (*Id.* ¶¶ 77, 79.)

Count Five: "Unfair Debt Collection Based Upon Fraud," alleging that the judgments resulting from the Superior Court Foreclosure Actions were "obtained by fraud" and "must be vacated." (*Id.* ¶ 82.)

## II. Discussion

Plaintiffs object to the Recommended Ruling on two grounds: first, alleging for the first time that their FHA claim is predicated upon discrimination "against Patricia Braca because she was a female," (Pls.' Obj. at 5), and second, that *Rooker-Feldman* is not a bar to their claims because "there is no final judgment" in EMC's foreclosure action against Plaintiffs, (*id.* at 7). Even construing the pro se complaint liberally, the Court

concludes that the complaint must be dismissed and adopts and approves the Recommended Ruling.

First, the Complaint does not allege a valid FHA claim by alleging that FCC discriminated against Patricia Braca for being "an individual" rather than a corporation. (*See* Compl. ¶ 44.) To state a FHA claim, a plaintiff must allege discrimination "on the basis of 'race, color, religion, sex, familial status, or national origin.'" *Valdez v. Town of Brookhaven*, No. 05-CV-4323 (JS), 2005 WL 3454708, at *12 (E.D.N.Y. Dec. 15, 2005) (quoting 42 U.S.C. § 3604). Without any factual support, Plaintiffs for the first time in their Objections to the Recommended Ruling assert that the FHA claim is predicated upon discrimination on the basis of Patricia Braca's gender. (Pls.' Obj. at 5.) This claim fails for two reasons. First, Plaintiffs have not filed an amended complaint alleging gender discrimination in violation of the FHA, and in the absence of an amended complaint, it is not proper for the Court to consider this allegation raised for the first time in a memorandum of law. *See Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 318 (S.D.N.Y. 2003) ("Plaintiffs may not amend their complaint through their opposition brief.") Second, even if this allegation of gender discrimination were properly before the Court, it would not state a claim for relief because the allegations of gender discrimination are conclusory without any specific facts cited in support. *See S.E.C. v. DiBella*, No. 04-CV-1342 (EBB), 2005 WL 3215899, at *2 (D. Conn. Nov. 29, 2005) ("Dismissal may be based on . . . the absence of factual allegations to support a claim."). Given that Plaintiffs have not properly or plausibly alleged discrimination under the FHA, their objections are overruled, and the FHA claims in Count Two are dismissed.

Second, the Recommended Ruling held that Plaintiffs' allegations regarding the Superior Court Foreclosure judgments were precluded by the *Rooker-Feldman* doctrine just as similar claims regarding the Utzler Superior Court judgments were precluded in *Braca I*. The doctrine directs a federal court to abstain from considering claims when the following four requirements are met: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Remy v. New York State Dep't of Taxation & Fin.*, 507 F. App'x. 16, 18 (2d Cir. 2013) (quotations omitted). "[T]he applicability of the *Rooker–Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . . but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007).

Plaintiffs concede that there is final judgment in the second of the two Superior Court Foreclosure Actions, but assert that *Rooker-Feldman* does not apply because "there is no final judgment" in the first Superior Court Foreclosure Action that was brought by EMC. To the extent that Plaintiffs seek relief from an ongoing rather than final state proceeding, their claims would still be barred—by *Younger* abstention rather than *Rooker-Feldman*. *See Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) ("*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims."). Accordingly, Count Five is dismissed. To the extent that

7

Plaintiffs also seek relief from judgments of the Superior Court Foreclosure Actions in Counts One through Four such claims are also dismissed on these grounds.

Plaintiffs' claims under 18 U.S.C. §§ 1344 and 1014 must be dismissed, because no private rights of action exist under these two federal criminal bank fraud statutes. *See Park Nat. Bank of Chicago v. Michael Oil Co.*, 702 F. Supp. 703, 704 (N.D. Ill. 1989) ("Since the bank has no private cause of action under Section 1344 or Section 1014 which would confer jurisdiction on this court pursuant to 28 U.S.C. Section 1331, Chicago Fleet's motion to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) is granted."). Accordingly, Plaintiffs' claims under 18 U.S.C. §§ 1344 and 1014 in Counts One and Two are dismissed.

To the extent that Plaintiffs assert common-law fraud or other state-law claims against Defendants separate and apart from the claims dismissed on *Rooker-Feldman* and *Younger* grounds—and it is not clear that they do—this Court lacks jurisdiction, because Plaintiffs have not alleged complete diversity of all adverse parties.[4] *See Herrick Co., Inc.*

---

[4] Additionally, Plaintiffs' allegations against Countrywide were the subject of a separate suit filed by the Bracas for breach of contract in state court. *See Countrywide Home Loans, Inc.*, CV054013527S, 2008 WL 2930297, at *5 (Conn. Super. Ct. July 8, 2008) (denying Countrywide's motion for summary judgment). To the extent that the allegations in that case have been decided on the merits, Plaintiffs would be precluded from again litigating such claims here. *See O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) ("Under Connecticut law: [A] former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. Claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made." (alteration in original) (quoting *Joe's Pizza, Inc. v. Aetna Life and Cas. Co.*, 236 Conn. 863, 871–72 (1996))). Because the final disposition of Plaintiffs' state-court action against Countrywide is unknown, this Court cannot determine if claim preclusion serves as an additional bar to these claims. In any event, the Court finds sufficient grounds to dismiss these claims for the reasons discussed above.

*v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (making the "axiomatic observation that diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships"). In fact, a number of the named Defendants are, like Plaintiffs, Connecticut residents. (*See* Ex. 1 to Compl. [Doc. # 1-1] at 26–27.) Consequently, any common-law fraud or other claims asserted in Counts One through Five requiring diversity jurisdiction are dismissed.

III.  **Conclusion**

For the reasons discussed above, the Recommended Ruling [Doc. # 10] is APPROVED and ADOPTED, Plaintiffs' objections are OVERRULED, and Plaintiffs' Complaint [Doc. # 1] is DISMISSED in its entirety. Accordingly, Plaintiffs' "Motion to Seek Stay(s)" [Doc. # 3], "Motion to Open a Judgment" [Doc. # 4] and "Emergency Motion for Stay" [Doc. # 12] are all DENIED without prejudice to seek relief in state court.

                              IT IS SO ORDERED.

                              /s/_____
                              Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of August, 2013.